LEN SANDS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sands v. Commissioner
Docket No. 4514-77.
United States Tax Court
T.C. Memo 1980-134; 1980 Tax Ct. Memo LEXIS 448; 40 T.C.M. (CCH) 236; T.C.M. (RIA) 80134; April 23, 1980, Filed; As Amended James R. Rich, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies and additions to tax [1] due from the petitioner for the years 1968 through 1972 in the following amounts: *449 Section 6653(b) [2] Year
Deficiency
Additions
1968
$ 0
$ 1,598.53
1969
3,756.43
2,488.40
1970
792.27
987.42
1971
427.62
2,078.14
1972
10,060.56
12,060.56
On November 27, 1979, the Court granted respondent's motion to dismiss for lack of prosecution, as to the deficiency issue for each year. The issue remaining for our consideration is whether petitioner is liable for the fraud penalty under section 6653(b) for the years 1968 through 1972, or, in the alternative for additions to tax under section 6651(a) and section 6653(a). Petitioner did not appear personally or through a representative for the trial. FINDINGS OF FACT Petitioner resided in Birmingham, Michigan, on the date the petition was filed in this case. Petitioner was a successful businessman during the years in issue. During the year 1968 and a portion of the year 1969, he was employed by the advertising firm of McManis, John and Adams of Bloomfield Hills, Michigan. In 1969 he also worked for American Raceways, Inc. and Bramson Publishing Company and in 1970 *450 he worked for American Raceways, Inc. Starting in about April, 1970, petitioner went into business for himself. He had an advertising agency that he operated under the name of Owens Associates and in that capacity he received commissions from the advertising firm of McManis, John and Adams. In October of 1970, petitioner formed a sole proprietorship called Legal Abortions for Women, an abortion referral agency. He operated this business through 1972. In 1972 he opened up another business known as Overnight Caribbean Divorce, another sole proprietorship. For a fee he would make arrangements for individuals to fly to the Caribbean to obtain a divorce. Petitioner earned wages and had gross receipts in the following amounts from these endeavors: Year
Amount
Source
1968
$14,000.00 **
MacManus, John & Adams, Inc.
1969
$ 1,229.53
MacManus, John & Adams, Inc.
$ 5,999.94
American Raceways, Inc.
* $10,833.29 **
Bramson Publishing Company
1970
$ 1,200.00
MacManus, John & Adams, Inc.
$ 4,493.25 **
American Receways, Inc.
* $ 2,769.40
Abortion Referrals/Advertising Work
1971
$29,760.00
Abortion Referrals
1972
$86,970.00
Abortion Referrals
* $14,850.13
Abortion Referrals
* $ 6,265.00
Overnight Caribbean Divorce
*451 Petitioner did not file timely tax returns for any of the years 1968 through 1972. During 1972 he was contacted by a revenue agent of the Internal Revenue Service concerning the filing of a tax return for his abortion referral agency. Petitioner informed the agent that the abortion agency was a sole proprietorship rather than a corporation and he also told the agent that his 1971 return had been filed in March or April of 1972. On July 2, 1973, petitioner was contacted by special agents of the Internal Revenue Service. He told the special agents that he had failed to file his 1968 to 1972 tax returns because he could not be bothered with all that paper work. Subsequently, on February 11, 1974, and as a result of these contacts by the Internal Revenue Service, petitioner filed delinquent returns for those years. In December, 1973, prior to filing the delinquent returns, petitioner went to Kenneth Laufer to have him prepare delinquent returns. During the course of their discussion, petitioner failed to advise Laufer that he earned $10,833.29 in wages from Bramson Publishing Company in 1969; he did not tell Laufer about *452 $2,769.40 in gross receipts he received in 1970 from his abortion referral agency and his advertising work; he omitted telling Laufer about $14,850.13 in gross receipts he derived in 1972 from his abortion referral agency and $6,265 he received in that same year from his Overnight Caribbean Divorce. Consequently, none of this income was reflected on his returns for those years.
During the year 1972 petitioner entered into an agreement with Doctor Hugeria (to whom petitioner made abortion referrals) to have three checks issued to a female acquaintance of petitioner. These checks were made payable to her; she signed the checks, cashed them, and gave the money to petitioner.Hugeria paid this money for referrals that had been made by petitioner to the doctor, and these checks totalled $6,824. Petitioner never filed income tax returns for the years 1965 through 1967. Petitioner was charged with criminal failure to file his 1969, 1970, and 1971 tax returns, but he fled to Mexico to avoid trial on these charges and a warrant was issued for his arrest. As of the time of the trial of this case in 1979 he had not yet been apprehended. ULTIMATE FINDING OF FACT At least a portion *453 of the underpayment in income taxes due from petitioner for each of the years 1968 through 1972 is the result of fraud with the intent to evade taxes under section 6653(b). OPINION The sole issue for our determination is whether petitioner is liable for the fraud penalty under section 6653(b) for the years 1968 through 1972, or, in the alternative for additions to tax under sections 6651(a) and 6653(a). The existence of fraud under section 6653(b) is a question of fact to be determined upon consideration of the entire record. . The primary question in determining whether fraud is present is whether there has been an intentional wrong-doing with a specific purpose of evading a tax believed by the taxpayer to be properly owing. . Respondent has the burden of proving by clear and convincing evidence that petitioners are liable for additions to taxes for fraud. Section 7454(a). This burden may, of course, be met with circumstantial evidence. Such evidence includes conduct calculated to mislead or conceal. . *454 The record discloses that petitioner was a successful businessman and we think it fair to conclude that he was fully aware of his responsibilities with regard to satisfying his federal income tax obligations. Yet, he willfully failed to file timely income tax returns for the years 1968 through 1972. Delinquent returns were filed only because petitioner had been contacted by the Internal Revenue Service. Willful failure to file a timely income tax return may not by itself establish petitioner's liability for fraud, , but this is not a mere failure to file case. There are other facts, so called affirmative indications of fraud, which establish that petitioner's underpayment of taxes was the result of fraud with the intent to evade tax. See , aff'd. in an unpublished opinion, , and cases cited therein. When petitioner filed the delinquent returns, he did not seize upon this opportunity to completely rectify his past transgressions. Instead, it is clear that petitioner willfully understated his taxable income *455 on his delinquent returns for the years 1969, 1970 and 1972 by intentionally withholding information from his return preparer regarding his business activities and his receipts. Also in 1972, petitioner deliberately concealed income by arranging to have three checks issued to a female acquaintance for services he performed. These payments were turned over to petitioner and were not reported by him. Petitioner also attempted to conceal his failure to file a tax return for the year 1971 by informing a revenue agent in 1972 that he had filed his 1971 return and after that contact he made no effort to delinquently file his 1968 through 1971 returns. In 1973 he intentionally misrepresented the facts by telling a special agent that his only source of income was from abortion referrals from Dr. Hugeria, hiding the fact that he also earned income from Overnight Caribbean Divorce. He also intentionally misrepresented the reason that Owens Associates had been established. In the final analysis, we are convinced that petitioner's willful failure to file timely income tax returns, his dishonest response to a revenue agent's inquiry in 1972 about his 1971 filing status, his failure to file *456 delinquent returns for the years 1968 through 1971 after the revenue agent's contact, his deliberate attempt to conceal sources of income from his return preparer and the Internal Revenue Service, his eventual submission of false delinquent returns for at least three years, the substantial tax liabilities incurred for each of the years in issue, and his flight from the country to avoid prosecution for failing to file income tax returns are cumulative and affirmative indications that petitioner did willfully attempt to evade his income taxes for each of the years in issue. See . We conclude that respondent has proven by clear and convincing evidence that at least some part of the underpayment for each of such years is due to fraud with intent to evade taxes. Respondent's determination that petitioner is liable for the fraud penalty is thus sustained. Decision will be entered under Rule 155. Footnotes
1. Petitioner failed to file timely tax returns for the years in question, but he did file delinquent returns. Therefore, additions to tax are calculated on the basis of the underpayment of taxes due as of the due date of the return and not on the basis of the amount of the deficiency due as a result of the delinquently filed return. ; .↩
2. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years at issue.↩
*. Not reflected on delinquent returns. ** Wages↩